IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NORTHEAST MEDICAL SERVICES, INC., | No. C 12-2895 CW |
| Plaintiff, | ORDER GRANTING FEDERAL DEFENDANTS' MOTION TO DISMISS (Docket No. 30); GRANTING IN PART STATE DEFENDANTS' MOTION TO DISMISS (Docket No. 29). |
| v. | |
| CALIFORNIA DEPARTMENT OF HEALTHCARE SERVICES, et al., | |
| Defendants. | |
| _____/ | |

Plaintiff Northeast Medical Services, Inc. (NEMS) brings this action for declaratory and injunctive relief against Defendants U.S. Department of Health and Human Services (HHS), HHS Secretary Kathleen Sebelius, California Department of Health Care Services (DHCS), DHCS Director Toby Douglas, and California Health and Human Services Agency (HHSA). Federal Defendants HHS and Sebelius move to dismiss for lack of subject matter jurisdiction and failure to state a claim. State Defendants DHCS, Douglas, and HHSA move separately to dismiss on the same grounds. After considering all of the parties' submissions and oral argument, the Court grants Federal Defendants' motion to dismiss and grants in part and denies in part State Defendants' motion to dismiss.

BACKGROUND

NEMS is a non-profit health center that offers medical care to the "poor and medically-underserved populations of the San Francisco Bay Area." Docket No. 1, Compl. ¶¶ 19-20. It currently serves over thirty-five thousand patients and conducts nearly two-hundred thousand patient visits per year. Id.

For the past four decades, NEMS has received federal funding under § 330 of the Public Health Services Act.  42 U.S.C. § 254b; Compl. ¶ 19.  Under that provision, NEMS is required to provide medical services to communities with limited health care access and may not refuse services to any person based on that person's inability to pay.  Id. ¶¶ 1-2; 42 U.S.C. § 254b(a)(1).  As a further condition of its funding, NEMS must also provide services to any person enrolled in Medicaid.  42 U.S.C. § 254b(k)(3).

Medicaid is a federal program that offers participating states financial assistance to provide medical services to the poor.  Cal. Welf. & Inst. Code § 10740; Compl. ¶ 22.  While states "do not have to participate in Medicaid, . . . those that choose to do so 'must comply both with statutory requirements imposed by the Medicaid Act and with regulations promulgated by the Secretary of [HHS].'"  Managed Pharmacy Care v. Sebelius, 2012 WL 6204214, at *2 (9th Cir.) (citations omitted).  One of these requirements is that participating states reimburse federally-qualified health centers for the services they provide to Medicaid enrollees.  42 U.S.C. § 1396a(a)(15).  Thus, federally-qualified health centers, like NEMS, typically receive funding from both the federal government (under the Public Health Services Act) and the State (under the Medicaid Act).

California participates in Medicaid through its Medi-Cal program.  Cal. Welf. & Inst. Code § 10740; Compl. ¶ 22.  It is therefore required to reimburse NEMS for the organization's costs in providing care to Medicaid enrollees.  42 U.S.C. § 1396a(bb); Compl. ¶¶ 3-5.  It provides these reimbursements through a "managed care organization" called the San Francisco Health Plan

(SFHP), with which the State has contracted to help administer Medi-Cal in the San Francisco area.  Compl. ¶¶ 3, 77-79.  SFHP provides NEMS with regular payments that are meant to estimate NEMS's prospective costs for treating Medicaid enrollees for the upcoming fiscal year.  Id. ¶¶ 60-61.  At the end of every fiscal year, NEMS is required to report its actual costs to DHCS, the agency tasked with administering Medi-Cal, so that the agency can determine whether the SFHP's prospective payments fully compensated NEMS for its Medicaid-related costs that year.  Id. ¶¶ 58-59, 85; 42 U.S.C. § 1396a(bb)(5).  If the report reveals that SFHP's prospective payments exceeded NEMS's actual Medicaid costs for the year, then NEMS must return any excess funding it received to DHCS.  Compl. ¶¶ 58-59.  If the report shows that SFHP's payments fell short of NEMS's actual costs for the year, then DHCS must make up the shortfall by paying NEMS the difference.  Id.  This process, which the Medicaid Act requires all federally-qualified health centers to complete, is known as the annual "reconciliation."  Id. ¶ 85.[1]

In May 2011, NEMS learned that the U.S. Attorney's office for the Northern District of California had opened an investigation

---

[1] The annual reconciliation process is described in the Medicaid Act as follows:

> In the case of services furnished by a Federally-qualified health center or rural health clinic pursuant to a contract between the center or clinic and a managed care entity (as defined in section 1396u-2(a)(1)(B) of this title), the State plan shall provide for payment to the center or clinic by the State of a supplemental payment equal to the amount (if any) by which the amount determined under paragraphs (2), (3), and (4) of this subsection exceeds the amount of the payments provided under the contract.

42 U.S.C. § 1396a(bb)(5).

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

into whether NEMS had knowingly reported false information to DHCS on its annual reconciliation reports.  Id. ¶¶ 88, 91.  The investigation focused on whether NEMS had violated the federal False Claims Act (FCA), 31 U.S.C. § 3729, by under-reporting the amount of payments it received from SFHP so that it could recoup larger reconciliation payments from DHCS.  Compl. ¶¶ 88-94.  NEMS learned of the investigation when it was served with a Civil Investigative Demand by HHS that month.  Id. ¶ 88.

In response to the Civil Investigative Demand, NEMS has produced thousands of documents to the U.S. Attorney's office and met several times with HHS and DHCS representatives to answer questions about its financial record-keeping.  Id. ¶¶ 89-92.  During a conference call with HHS and the U.S. Attorney's office on February 9, 2012, NEMS learned "for the first time" that the United States was considering intervening in a qui tam action that had previously been filed against NEMS in this district.  Id. ¶ 93.  That action, which was filed under seal on May 3, 2010, charges NEMS with violations of both the FCA, 31 U.S.C. § 3729, and the California False Claims Act, Cal. Gov't Code §§ 12650 et seq., and seeks treble damages and civil penalties.  See United States & State of California ex rel. Trinh v. Northeast Med. Servs., Case No. 10-1904-CW, Docket No. 1, at 1.

On April 9, 2012, an Assistant U.S. Attorney (AUSA) sent NEMS a letter stating that the government's preliminary review of NEMS's annual reconciliation reports "supports the allegations made in the qui tam action."  Compl., Ex. 2, at 2.  The AUSA's letter described how NEMS had apparently received over twenty-seven million dollars in Medicaid-related payments from SFHP

United States District Court
For the Northern District of California

between 2005 and 2010 but only reported receiving thirteen million dollars from SFHP on its annual reconciliation reports to DHCS. Id.  This under-reporting, according to the letter, allowed NEMS to recoup nearly fifteen million dollars in overpayments from DHCS during that period.  Id.  The letter concluded that "NEMS could be liable under the False Claims Act" and invited NEMS to discuss the issue further in settlement negotiations.  Id.  It also noted that the federal government would soon be deciding whether or not to intervene in the qui tam action.  Id.

In addition to describing the results of its initial investigation, the government expressly rejected NEMS's proffered reasons for declining to report receipt of the full SFHP payments to DHCS.  Id.  Previously, in a January 2012 letter to the U.S. Attorney, NEMS had expressed the view that it was not statutorily obliged to report all of the funds that it received from SFHP to DHCS.  Compl., Ex. 1, at 1-3.  Rather, it argued, the Medicaid Act permitted it to report only a portion of the funds it received from SFHP.  Id.  The AUSA's April 2012 letter explained why the federal government did not agree with NEMS's interpretation of the Medicaid Act's financial reporting requirements.  Id., Ex. 2, at 1-2.

On April 12, 2012, three days after receiving the AUSA's letter, NEMS notified the U.S. Attorney that it had not changed its position and "had no settlement to propose."  Id. ¶ 95.  The U.S. Attorney's office thus ceased its settlement efforts and continued its investigation of NEMS.  Id. ¶¶ 96-98.  NEMS, in turn, filed its annual reconciliation report for fiscal year 2011 on May 31, 2012.  Id. ¶¶ 15, 99. NEMS asserts that it filed the

report "in a manner consistent with its past practice" but notified DHCS that its interpretation of its reporting requirements differed from the interpretation that the U.S. Attorney had recently articulated in its April 9 letter.  Id. ¶ 15.

On June 4, 2012, less than a week after filing its reconciliation report, NEMS filed this lawsuit.  In its complaint, NEMS requests:

(1)   a judicial declaration that "the legal conclusions and positions (including that of the relator in the above-described qui tam action) expressed in the AUSA's letter are unsupported by any (properly promulgated) rule or regulation, are a departure from existing policy on the substantive rights of Section 330 health centers, and contrary to law," id. ¶ 127;

(2)   a judicial declaration that NEMS's own proposed interpretation of the statutory reporting requirements for federally-qualified health centers is correct, id. ¶¶ 128-31;

(3)   an order directing Defendants to "implement a payment system (including past and future payments)" that comports with NEMS's interpretation of federal law, id. ¶ 131;

(4)   attorneys' fees and costs, id. ¶ 133; and

(5)   "such other and further relief as the Court deems warranted or just," id. ¶ 134.

On July 25, 2012, the Court related this case to the pending qui tam action against Plaintiff.  Docket No. 28.  One week later, on August 2, the United States filed its notice of election to

intervene in that action.  On August 6, 2012, Defendants filed their motions to dismiss in this case.

Five months later, on January 4, 2013, the State of California filed its notice of election to intervene in the qui tam action.  On January 15, 2013, the United States and the State of California filed their joint complaint-in-intervention in that case, charging NEMS with "knowingly submitt[ing] false reconciliation reports" to DHCS in violation of the FCA and California False Claims Act.  Docket No. 26 in Case No. 10-1904.

LEGAL STANDARDS

I.   Subject Matter Jurisdiction

Dismissal is appropriate under Rule 12(b)(1) when the district court lacks subject matter jurisdiction over the claim. Fed. R. Civ. P. 12(b)(1).  Federal subject matter jurisdiction must exist at the time the action is commenced.  Morongo Band of Mission Indians v. Cal. State Bd. of Equalization, 858 F.2d 1376, 1380 (9th Cir. 1988).  Subject matter jurisdiction is a threshold issue which goes to the power of the court to hear the case. Therefore, a Rule 12(b)(1) challenge should be decided before other grounds for dismissal, because they will become moot if dismissal is granted.  Alvares v. Erickson, 514 F.2d 156, 160 (9th Cir. 1975).

A federal court is presumed to lack subject matter jurisdiction until the contrary affirmatively appears.  Stock West, Inc. v. Confederated Tribes, 873 F.2d 1221, 1225 (9th Cir. 1989).  An action should not be dismissed for lack of subject matter jurisdiction without giving the plaintiff an opportunity to amend unless it is clear that the jurisdictional deficiency cannot

7

be cured by amendment.  May Dep't Store v. Graphic Process Co.,
637 F.2d 1211, 1216 (9th Cir. 1980).

II.  Failure to State a Claim

A complaint must contain a "short and plain statement of the
claim showing that the pleader is entitled to relief."  Fed. R.
Civ. P. 8(a).  On a motion under Rule 12(b)(6) for failure to
state a claim, dismissal is appropriate only when the complaint
does not give the defendant fair notice of a legally cognizable
claim and the grounds on which it rests.  Bell Atl. Corp. v.
Twombly, 550 U.S. 544, 555 (2007).  In considering whether the
complaint is sufficient to state a claim, the court will take all
material allegations as true and construe them in the light most
favorable to the plaintiff.  NL Indus., Inc. v. Kaplan, 792 F.2d
896, 898 (9th Cir. 1986).  However, this principle is inapplicable
to legal conclusions; "threadbare recitals of the elements of a
cause of action, supported by mere conclusory statements," are not
taken as true.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)
(citing Twombly, 550 U.S. at 555).

When granting a motion to dismiss, the court is generally
required to grant the plaintiff leave to amend, even if no request
to amend the pleading was made, unless amendment would be futile.
Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc., 911
F.2d 242, 246-47 (9th Cir. 1990).  In determining whether
amendment would be futile, the court examines whether the
complaint could be amended to cure the defect requiring dismissal
"without contradicting any of the allegations of [the] original
complaint."  Reddy v. Litton Indus., Inc., 912 F.2d 291, 296 (9th
Cir. 1990).

**United States District Court**
For the Northern District of California

DISCUSSION

I.   Plaintiff's Legal Claims

Plaintiff asserts three causes of action in its complaint. The first and third causes of action essentially allege that the AUSA's letter mischaracterizes Plaintiff's financial reporting obligations and propounds an invalid interpretation of the Medicaid Act.  Compl. ¶¶ 115-18, 124-26.  The second cause of action alleges that DHCS has violated the Medicaid Act by failing to provide Plaintiff with timely reimbursements for the organization's costs in serving Medicaid enrollees.  Compl. ¶¶ 119-23.

Although Plaintiff asserts in its opposition brief that the "allegations in the Complaint are (with certain exceptions obvious from the text) directed toward and applicable to both (federal and State) sets of defendants," Opp. Fed. Defs.' Mot. Dismiss 1, its complaint does not delineate clearly which claims are asserted against which Defendants.  In particular, it is not clear whether Plaintiff's first and third causes of action are directed at both State and Federal Defendants or only at Federal Defendants.  See, e.g., Compl. ¶¶ 124-26 (referring to "defendants" generally without further specification).  In light of this ambiguity, the Court assumes that Plaintiff's first and third causes of action are directed at both sets of Defendants and that its second cause of action is directed exclusively at State Defendants.

II.   Subject Matter Jurisdiction

A.   Claims Against Federal Defendants

Plaintiff seeks a judicial declaration that the federal government's interpretation of the financial reporting

requirements for federally-qualified health centers, as expressed in the AUSA's letter, is "contrary to law." Compl. ¶¶ 117, 127. It has sought review of the AUSA's letter under the Administrative Procedure Act (APA), 5 U.S.C. § 704. Federal Defendants argue that the Court lacks subject matter jurisdiction over Plaintiff's claims because the AUSA's letter is not subject to judicial review.

Under the APA, a federal court may only review an agency action if (1) a statute expressly provides for judicial review of that action or (2) the agency's action is "final" in nature. 5 U.S.C. § 704. Thus, unless judicial review is statutorily authorized, "finality is a jurisdictional requirement to obtaining judicial review under the APA." Fairbanks Northstar Borough v. U.S. Army Corps of Eng'rs, 543 F.3d 586, 591 (9th Cir. 2009).

"For an agency action to be final, the action must (1) 'mark the consummation of the agency's decisionmaking process' and (2) 'be one by which rights or obligations have been determined, or from which legal consequences will flow.'" Oregon Natural Desert Ass'n v. U.S. Forest Serv., 465 F.3d 977, 982 (9th Cir. 2006) (citing Bennett v. Spear, 520 U.S. 154, 178 (1997)). This inquiry requires the court to make a pragmatic consideration of the effect of the challenged action -- not just its label. Id. at 985. The finality requirement is satisfied only when an agency action imposes an obligation, denies a right, or fixes some legal relationship as the consummation of the administrative process. Id. at 986-87. "An agency action may be final if it has a 'direct and immediate . . . effect on the day-to-day business' of the subject party." Id. at 987 (alteration in original).

**United States District Court**
For the Northern District of California

Here, Plaintiff asserts that the AUSA's letter constitutes a "sufficiently final agency action to be judicially reviewable." Compl. ¶ 101.  It argues that the letter represents "HHS's current view" as to how federally-qualified health centers, like Plaintiff, are supposed to file their annual reconciliation reports.  Id.  In addition, Plaintiff contends that the letter's effects are "direct and immediate" because it instilled in Plaintiff the "well-founded fear that the state and/or federal government will enforce the positions and interpretations stated therein."  Id. ¶ 112.

Even assuming that the AUSA's letter actually constitutes action by HHS -- something the parties dispute here -- it does not satisfy the APA's finality requirement.  The letter, which merely summarizes the preliminary findings of the U.S. Attorney's FCA investigation, does not affect Plaintiff's legal rights or obligations.  It uses noncommittal language, noting that the government's initial review of Plaintiff's financial records "seems to indicate" that Plaintiff falsified its reconciliation reports and that this conduct "appears to violate" the FCA. Compl., Ex. 2, at 2 (emphasis added); see also id. ("It appears NEMS could be liable under the [FCA]." (emphasis added)). Plaintiff itself acknowledges in its complaint that the letter uses "uncertain language" in describing the potential scope of its FCA liability.  Compl. ¶ 94.

Furthermore, the letter makes clear that it is an invitation to settlement negotiations rather than a formal declaration of sanctions or penalties.  Indeed, the subject line reads, in bold letters: "FOR SETTLEMENT PURPOSES ONLY."  Id.  The letter also

states, again in bold print, that the government's deadline for intervening in the pending <u>qui tam</u> action is July 2, 2012, indicating that any formal enforcement efforts would not begin, if at all, for another three months.  <u>Id.</u>  All of these elements demonstrate that the AUSA's letter was "of a merely tentative or interlocutory nature" and, thus, not subject to judicial review under the APA.  <u>See</u> <u>Bennett</u>, 520 U.S. at 178; <u>cf.</u> <u>N.J. Hosp. Ass'n v. United States</u>, 23 F. Supp. 2d 497, 500-01 (D.N.J. 1998) (holding that FCA settlement letters sent by the Department of Justice did not constitute final agency action because the "settlement letters merely indicate a belief by the DOJ that plaintiff's member hospitals <u>may</u> have violated the Medicare Act" (emphasis added)).

Plaintiff seeks to analogize this case to <u>Sackett v. EPA</u>, 132 S. Ct. 1367 (2012).  In <u>Sackett</u>, the Supreme Court held that a pair of residential property owners could challenge a "compliance order" that the EPA issued instructing them to bring their property into compliance with the Clean Water Act.  <u>Id.</u> at 1371. The Court concluded that the order qualified as a "final" agency action because its findings were not subject to further agency review and because the order imposed a binding "legal obligation" upon the plaintiffs -- namely, to comply with the order or face "double penalties in a future enforcement proceeding."  <u>Id.</u> at 1371-72.

In contrast, the findings in the AUSA's letter here were not only subject to further agency review but also had no impact on Plaintiff's legal obligations.  In fact, the letter itself stated that the government was still considering whether or not its

United States District Court
For the Northern District of California

investigatory findings ultimately justified intervention in the
qui tam action.  In short, the letter was merely speculative and
carried no guarantee of future enforcement activity.  As such, it
falls outside the ambit of APA finality and is not subject to
judicial review.  See Reliable Automatic Sprinkler Co., Inc. v.
Consumer Prod. Safety Comm'n, 324 F.3d 726, 732 (D.C. Cir. 2003)
("[T]he Commission's actions here, which are merely investigatory
and clearly fall short of filing an administrative complaint, are
not final agency action.  No legal consequences flow from the
agency's conduct to date, for there has been no order compelling
[the plaintiff] to do anything.").

     The Court therefore dismisses all claims against Federal
Defendants for lack of subject matter jurisdiction.  Because the
United States has now filed its complaint in the qui tam action --
and thus commenced an actual enforcement proceeding -- Plaintiff
may amend its claims for declaratory relief and raise them as
counterclaims in that action.

     B.   Claims Against State Defendants

     State Defendants argue that Plaintiff has failed to establish
both that it has standing and that its claims are ripe.  These
arguments are addressed in turn.

          1.   Standing

     Because challenges to standing implicate a federal court's
subject matter jurisdiction under Article III of the U.S.
Constitution, they are properly raised in a motion to dismiss
under Rule 12(b)(1).  White v. Lee, 227 F.3d 1214, 1242 (9th Cir.
2000).  To establish standing, a plaintiff must show: "(1) he or
she has suffered an injury in fact that is concrete and

United States District Court
For the Northern District of California

particularized, and actual or imminent; (2) the injury is fairly traceable to the challenged conduct; and (3) the injury is likely to be redressed by a favorable court decision."  Salmon Spawning & Recovery Alliance v. Gutierrez, 545 F.3d 1220, 1225 (9th Cir. 2008).

A concrete injury is one that is "'distinct and palpable . . . as opposed to merely abstract.'"  Schmier v. U.S. Court of Appeals for 9th Circuit, 279 F.3d 817, 821 (9th Cir. 2002) (quoting Whitmore v. Arkansas, 495 U.S. 149, 155 (1990)).  The "injury must have actually occurred or must occur imminently; hypothetical, speculative or other 'possible future' injuries do not count in the standings calculus."  Schmier, 279 F.3d at 821 (citing Whitmore, 495 U.S. at 155).  "Standing is determined by the facts that exist at the time the complaint is filed."  Clark v. City of Lakewood, 259 F.3d 996, 1006 (9th Cir. 2001).

In the present case, Plaintiff appears to identify two possible sources of legal harm in its complaint.  First, in a section of its complaint entitled, "Harm to NEMS," it asserts,

> The harm or hardship that makes this dispute ripe for review is not that NEMS faces a qui tam action or the prospect of having to defend itself against some other enforcement action . . . , but rather the compliance dilemma it faces as a result of an AUSA's letter purporting to give an authoritative interpretation of statutory and regulatory provisions that have a direct, immediate, and harmful effect on NEMS' current and future operations.

Compl. ¶ 100 (repeating text almost verbatim from ¶ 14).  Second, in a later section of its complaint, Plaintiff alleges that State Defendants have failed to make timely reconciliation payments as required by the Medicaid Act.  Id. ¶¶ 122-23.  Of these two

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

asserted injuries, only the latter is sufficient to confer standing here.

The first injury that Plaintiff alleges -- the "compliance dilemma" created by the AUSA's letter -- is not fairly traceable to State Defendants because Plaintiff has not alleged that DHCS or HHSA played any role in drafting the AUSA's letter.  Moreover, even if Plaintiff had included such allegations in its complaint, the injury Plaintiff asserts is still too abstract to support standing here.  To establish standing based on a compliance dilemma, a plaintiff must allege that the government's conduct has presented it with an "immediate dilemma to choose between complying with newly imposed, disadvantageous restrictions and risking serious penalties for violation."  Hemp Indus. Ass'n v. Drug Enforcement Agency, 333 F.3d 1082, 1086 (9th Cir. 2003) (emphasis added; citations and quotation marks omitted).  Here, however, Plaintiff has not alleged that it faced any immediate penalties or consequences for noncompliance.  In fact, Plaintiff expressly denies that any such consequences are the motivating factor behind this lawsuit.  It states in its complaint that the "harm or hardship that makes this dispute ripe for review is not that NEMS faces a qui tam action or the prospect of having to defend itself against some other enforcement action."  Compl. ¶ 100 (repeating text almost verbatim from ¶ 14) (emphasis added). Thus, as currently plead, Plaintiff's "compliance dilemma" cannot constitute an injury-in-fact because Plaintiff has expressly declined to rely upon whatever harm it might face as a consequence of its noncompliance.

United States District Court
For the Northern District of California

The second injury that Plaintiff has asserted -- the State's failure to make timely reconciliation payments -- is more concrete.  The Medicaid Act requires participating states to reimburse federally-qualified health centers every four months for the services they provide to Medicaid enrollees.  42 U.S.C. § 1396a(bb)(5)(B); see also Three Lower Counties Cmty. Health Servs. v. Maryland, 498 F.3d 294, 301-03 (4th Cir. 2007) ("[T]he statute plainly provides that a State must make fully compensatory supplemental payments no less frequently than every four months.").  Because Plaintiff's complaint alleges that DHCS has "continuously and consistently failed to make fully compensatory supplemental payments on the schedule" required by the Medicaid Act, it has identified a cognizable legal injury here: specifically, that DHCS has "deprive[d] NEMS of its right to full and timely reimbursement."  Id. ¶¶ 122-23.  This injury, which is directly traceable to the conduct of State Defendants, is sufficient to support standing here for Plaintiff's second cause of action for declaratory relief.[2]

State Defendants contend that DHCS's practice of making interim prospective payments to NEMS satisfies the Medicaid Act's four-month payment requirement.  The language of the statute, however, makes clear that federally-qualified health centers are entitled to fully compensatory payments every four months.  42

---

[2] Plaintiff spends several pages of its opposition brief, which was filed on September 13, 2012, arguing that it will be injured if State Defendants fail to make a reconciliation payment by September 30, 2012. This injury cannot support standing here because it did not exist at the time the complaint was filed.  See Clark, 259 F.3d at 1006. Nevertheless, because Plaintiff's complaint alleges that DHCS's violation of the Medicaid Act is ongoing, Plaintiff has identified a cognizable injury-in-fact here.

**United States District Court**
For the Northern District of California

U.S.C. § 1396a(bb)(5)(B) (requiring the State to make "a supplemental payment <u>equal to</u> the amount" by which the health center's actual costs exceed the amount of funding received from the State (emphasis added)).  Relying on this language, the Fourth Circuit has specifically rejected State Defendants' argument here. <u>Three Lower Counties</u>, 498 F.3d at 301, 303 ("Even though the partial interim payment is made with the frequency required by the statute, it does not fulfill the statutory requirement of full compensation because the reconciliation payment comes a full six to nine months after the end of the applicable quarter.").

Accordingly, State Defendants' motion to dismiss Plaintiff's second cause of action is denied.  Because Plaintiff has not identified an injury-in-fact sufficient to support standing for its first and third causes of action, State Defendants' motion to dismiss those causes of action is granted.  Plaintiff is granted leave to amend those claims by raising them as counterclaims in the pending <u>qui tam</u> action.

B.   Ripeness

Like standing, ripeness pertains to a federal court's subject matter jurisdiction and is properly raised in a Rule 12(b)(1) motion to dismiss.  <u>Chandler v. State Farm Mut. Auto. Ins. Co.</u>, 598 F.3d 1115, 1122 (9th Cir. 2010) (citations omitted).  A "'claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all.'"  <u>Bova v. City of Medford</u>, 564 F.3d 1093, 1095 (9th Cir. 2009) (quoting <u>Texas v. United States</u>, 523 U.S. 296, 300 (1998)).  The Ninth Circuit has recognized that ripeness often

"coincides squarely with standing's injury in fact prong." <u>Bova</u>, 564 F.3d at 1095 (quotations and citations omitted).

Plaintiff's first and third causes of action are not ripe because, as explained above, Plaintiff has not identified a cognizable injury-in-fact to support standing for those claims. Plaintiff's second cause of action, however, is ripe because it is based on an injury that Plaintiff alleges is ongoing -- namely, State Defendants' failure to make timely reimbursement payments.

III. Failure to State a Claim

As noted above, the Court lacks subject matter jurisdiction over all of Plaintiff's claims against Federal Defendants and over Plaintiff's first and third causes of action against State Defendants.  Accordingly, there is no need to address whether these claims must be dismissed under Rule 12(b)(6).

Plaintiff's only surviving cause of action is its claim against State Defendants for their failure to make timely reimbursement payments as required by the Medicaid Act.  At least two circuits have recognized that a federally-qualified health center can bring such an action under 42 U.S.C. § 1983 to enforce its right to timely reconciliation payments.  <u>Three Lower Counties</u>, 498 F.3d at 303 ("At bottom, we conclude that the Medicaid Act requires Maryland to pay FQHCs fully compensatory supplemental payments not less frequently than four months after Maryland has received the claim for supplemental payment, as required by 42 U.S.C. § 1396a(bb)(5)."); <u>Rio Grande Community Health Ctr., Inc. v. Rullan</u>, 397 F.3d 56, 75 (1st Cir. 2005) ("We conclude that a private action can be brought by an FQHC under section 1983 to enforce 42 U.S.C. § 1396a(bb)."); <u>see also</u> <u>Pee Dee</u>

<u>Health Care, P.A. v. Sanford</u>, 509 F.3d 204, 210-11 (4th Cir. 2007) ("This court has also allowed a healthcare provider to pursue a § 1983 action to enforce § 1396a(bb)(5) of the Medicaid Act."). Other circuits have permitted federally-qualified health centers to bring claims for violations of similar Medicaid Act provisions. <u>See, e.g.</u>, <u>Cmty. Health Ctr. v. Wilson-Coker</u>, 311 F.3d 132, 136 (2d Cir. 2002) (permitting § 1983 claim against a state agency for failing to provide adequate reimbursement payments in violation of 42 U.S.C. § 1396a(bb)(2)).  These cases make clear that Plaintiff has stated a claim here by alleging that State Defendants have violated the Medicaid Act by failing to provide timely reimbursements.[3]

IV.  Eleventh Amendment Immunity

State Defendants contend that, under the Eleventh Amendment, DHCS and HHSA are immune from suit and cannot be subject to an injunction or forced to pay monetary damages.  Further, they contend that DHCS Director Douglas is immune from suit because he "does not have any enforcement authority that potentially could be implicated based on the facts alleged in this lawsuit."  State Defs.' Mot. Dismiss 13.

Plaintiff appears to concede that its claims against DCHS and HHSA are barred and that it may not recover damages for State Defendants' past conduct.  Its opposition brief does not address State Defendants' argument that DHCS and HHSA are immune and, at oral argument, it stated that it is only seeking "compliance going

---

[3] Although Plaintiff does not invoke § 1983 in the section of its complaint alleging violations of the Medicaid Act, it does cite the provision in an earlier section of the complaint.  <u>See</u> Compl. ¶ 18.

United States District Court
For the Northern District of California

forward" rather than damages for past Medicaid Act violations.
Docket No. 44, Hr'g Tr. 14:11-:12.[4]  In short, Plaintiff seems to
recognize that its claims against DHCS and HHSA are precluded by
the Eleventh Amendment and that damages for past conduct are not
available.  See generally Puerto Rico Aqueduct and Sewer Authority
v. Metcalf & Eddy, Inc., 506 U.S. 139, 146 (1993) (stating that
the Ex Parte Young exception to Eleventh Amendment immunity
"applies only to prospective relief, does not permit judgments
against state officers declaring that they violated federal law in
the past, and has no application in suits against the States and
their agencies, which are barred regardless of the relief sought"
(citations omitted)).

Plaintiff does, however, claim that Douglas has the requisite
authority to ensure DHCS's future compliance with the Medicaid
Act's reimbursement provisions.  It notes that Douglas has been
sued here in his official capacity as director of DHCS, which is
the agency responsible for administering the Medicaid program in
California.  See Compl. ¶¶ 22-23.  As DHCS director, Douglas
oversees the agency's practice of making reconciliation payments
to federally-qualified health centers like Plaintiff.  Cal. Welf.
& Inst. Code §§ 14001.11; 14132.100.  Accordingly, he has been
properly sued here and Plaintiff's claim against him is not barred
by the Eleventh Amendment.

---

[4] Plaintiff also noted at the hearing that it is currently
challenging "the way in which the state says the Eleventh Amendment
would apply here" before the Ninth Circuit in another case.  Hr'g Tr.
14:15-:21.  The Ninth Circuit has yet to hear argument in that case.
See North East Med. Servs., Inc. v. Cal. Dep't Health Care Servs., Case
No. 11-16795 (9th Cir. appeal filed July 21, 2011).

CONCLUSION

For the reasons set forth above, Federal Defendants' motion to dismiss (Docket No. 30) is GRANTED and State Defendants' motion to dismiss (Docket No. 29) is GRANTED in part and DENIED in part. In addition, Plaintiff's motion to strike (Docket No. 39) is DENIED as moot because the Court does not rely on the sections of State Defendants' reply brief to which Plaintiff objects.

Plaintiff is granted leave to amend its claims against Federal Defendants by raising them as counterclaims in the related qui tam action. Plaintiff is similarly granted leave to amend its first and third causes of action against DHCS Director Douglas by raising them as counterclaims in the qui tam action. Although Plaintiff may proceed in this action on its remaining claim against Douglas, the Court will consolidate this action with the qui tam action for pre-trial case management purposes, and may consolidate the two cases for trial if it appears that Plaintiff's claim raises the same issues as the qui tam action. If Plaintiff has reason to believe that Douglas' defense to that claim will raise the same issues as the qui tam action, it must raise the claim as a counterclaim in that action, and may do so voluntarily in any event.

Pursuant to the parties' stipulation in the qui tam action, NEMS must file its responsive pleading to the United States and the State of California's complaint-in-intervention by March 1, 2013. If NEMS files a motion to dismiss the complaint-in-intervention, the motion will be heard at 2:00 p.m. on April 11, 2013. A case management conference will be held on that date in both actions, regardless of whether NEMS moves to dismiss in the

United States District Court
For the Northern District of California

qui tam action.  The parties shall file a joint case management

statement by April 4, 2013.

         IT IS SO ORDERED.


Dated: 2/1/2013                    _____
                                   CLAUDIA WILKEN
                                   United States District Judge